1  DANIEL J. BERGESON, SBN 105439
   dbergeson@be-law.com
2  CAROLINE McINTYRE, SBN 159005
   cmcintyre@be-law.com
3  COLIN G. MCCARTHY, SBN 191410
   BERGESON, LLP
4  303 Almaden Boulevard, Suite 500
   San Jose, CA 95110-2712
5  Telephone:  (408) 291-6200
   Facsimile:   (408) 297-6000
6

7  Attorneys for Plaintiff
   ANNIE CHAN
8

9

10                 UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                      SAN JOSE DIVISION

13

14  ANNIE CHAN, an individual,              Case No. C08 04537 JW

15                                          **ORDER VACATING CASE**
                         Plaintiff,         **MANAGEMENT CONFERENCE;**
16                                          **SETTING HEARING ON**
            vs.                             **DEFENDANT'S MOTION TO DISMISS**
17
    BUCEPHALUS ALTERNATIVE ENERGY
18  GROUP, LLC, a limited liability company; and
    DOES 1 through 10,
19

20                       Defendant(s).

21

22

23

24

25

26

27

28

───────────────────────────────────────
JOINT CASE MANAGEMENT STATEMENT
C08 04537 JW

This is a an action brought by Plaintiff Annie Chan ("Ms. Chan") against defendants Bucephalus Alternative Energy Group, LLC ("BAEG"), a limited liability company registered in Pennsylvania, and Charles Kim ("Kim"), an individual (collectively, "Defendants") for, among other things, alleged breach of oral contract, promissory estoppel, fraud, negligent misrepresentation, and conversion relating to money which Ms. Chan wired to BAEG for a potential investment in BAEG.

The parties to the above-entitled action jointly submit this Case Management Conference Statement.

1.     **Jurisdiction and Service.**

**Ms. Chan's position:**  This action was filed by Ms. Chan in Santa Clara County Superior Court on August 13, 2008.  On September 29, 2008, BAEG removed the action to this Court.  On October 3, 2008, Chan filed an Amended Complaint, adding Kim as a defendant.  All parties have been served.

**BAEG's position:**   On October 20, 2008, BAEG filed a Motion to Strike Amended Complaint and Motion to Dismiss for Lack of Jurisdiction (FRCP 12(b)(2)), and Motion to Dismiss for Insufficient Service of Process (FRCP 12(b)(5)) and Motion to Dismiss for Failure to State A Claim on which relief can be granted. (FRCP 12(b)(6)).  BAEG asserts the Southern District of New York is the appropriate and most convenient forum for this matter to proceed.  All parties have been served.

2.     **Facts.  Ms. Chan's position:**  Ms. Chan first met Kim on May 1, 2008, when he visited Ms. Chan at the offices of KCR Development ("KCRD") in Cupertino, California.  Kim had learned of Ms. Chan's interest in Christian mission work and wanted to discuss the mission work he was involved in.

Thereafter, on May 19, 2008, Kim met with Ms. Chan in Seoul, Korea.  During that meeting, Kim told Ms. Chan that there was an "excellent" investment opportunity that was "almost guaranteed" (the "Proposed Investment").  Kim claimed that BAEG had been in existence for some time and had been successful.  According to Kim, all of the preferred Class A shares of BAEG had already been committed to another investor.  Kim also claimed that several well-

known wealthy individuals in Korea were considering making an investment in BAEG, including the Chairman of KPMG, a Congressman, a large Korean security company, and a few other high net-worth individuals.  Kim stated that he would introduce Ms. Chan to these individuals.  At this time, Kim did not provide any written materials concerning the Proposed Investment.

In order to induce Ms. Chan to invest in BAEG, Kim represented that if Ms. Chan wired $1 million to a BAEG account immediately, he would speak with his partners about trying to bring her in as a preferred Class A investor, even though all of the preferred Class A shares had already been committed to another investor.  Because Ms. Chan had to return to California the next day and no written materials were given to her at the meeting, Kim also promised Ms. Chan that she would have 60 days to conduct due diligence and the money would be held in trust during that time.  Kim further promised that if she decided to forego the Proposed Investment, her money would be returned to her upon request.  Kim further stated that he and his partners would come to Cupertino, California and make a presentation on the Proposed Investment to Chan and her advisors as part of due diligence.

In reliance upon Kim's representations, on May 23, 2008, Ms. Chan caused her available funds of $940,000 to be wired to a BAEG account to be held in trust while Ms. Chan conducted due diligence on the Proposed Investment.  If Ms. Chan had been satisfied with the results of the due diligence, she would have wired the balance of the $60,000.  Notably, BAEG never requested that Ms. Chan pay the $60,000 balance to BAEG.  Nor did anyone ever tell Ms. Chan that she was obligated to make any additional investment in BAEG.

Kim had no intention of giving Ms. Chan 60 days to conduct due diligence.  Nor did he intend to return Ms. Chan's money if she decided to forego the Proposed Investment.

On May 30, 2008, Kim met with Ms. Chan's advisors, Edward Chan ("E. Chan"), Wayne Okubo ("Okubo") and Michelle Woo ("Woo"), at KCRD's offices in Cupertino, California to present information on the Proposed Investment.  Kim reiterated, a few times during the meeting, that Ms. Chan had a 60 day due diligence period for the Proposed Investment.  Kim did not provide any written materials concerning the Proposed Investment.

On June 2, 2008, Kim emailed to E. Chan a BAEG Investment Memorandum.

1    On June 3, 2008, E. Chan requested a copy of the operating agreement for BAEG (the

2    "Operating Agreement").  On June 4, 2008, Kim emailed E. Chan a copy of the BAEG Operating

3    Agreement with the KCRD entity name.  Kim stated that once KCRD signed the agreement, his

4    partners would sign it and they would send him the investment stock certificate.  The Operating

5    Agreement provided that KCRD would purchase 3 1/3% of the Class A shares of BAEG.  The

6    Operating Agreement was never executed by Ms. Chan or on behalf of KCRD.

7    On June 16, 2008, Ms. Chan decided not to invest in the Proposed Investment.  Woo

8    emailed Kim stating that Ms. Chan was not going to proceed with the Proposed Investment.  Woo

9    requested that Kim transfer the funds that were held in trust on behalf of Ms. Chan to Ms. Chan's

10   account at Smith Barney and provided the wire transfer information.

11   On June 16, 2008, Kim responded to Woo's email stating that they were not ready for

12   withdrawal of the funds and requested an in-person meeting to discuss the Proposed Investment.

13   On June 16, 2008, Okubo emailed Kim again requesting to have the funds transferred to

14   Ms. Chan's account.

15   On June 18, 2008, Kim emailed Okubo and E. Chan requesting a telephone conference on

16   June 19, 2008 with his partners, Bhavesh Singh ("Singh") and Wayne S. Morrison ("Morrison").

17   Okubo agreed to have a conference call.  That call took place on June 19, 2008.  During the call,

18   Okubo confirmed Ms. Chan's decision not to invest in the Proposed Investment.

19   On or about June 24, 2008, Ms. Chan and Okubo sent a letter to Kim reconfirming Ms.

20   Chan's decision not to invest in the Proposed Investment within the 60 day due  diligence period.

21   Okubo wrote, "As [Chan's] declination of the investment was within the sixty (60) day due

22   diligence period there should be no impact on the monies that are held in trust on behalf of Chan."

23   Okubo and Ms. Chan once again requested the funds be transferred to Ms. Chan's account.

24   Subsequently, Kim contacted Ms. Chan directly to try to convince her to reconsider her

25   decision.  Kim told Ms. Chan that she was putting him in a "really bad position" with his partners

26   and that she was making him "lose face."

27   Thereafter, Ms. Chan, and representatives on her behalf, made multiple additional requests

28   to BAEG to return Ms. Chan's money to her.

1    On or about August 4, 2008, Ms. Chan attended a meeting with Kim, Singh and Morrison

2   at the Ritz Carlton in Marina Del Rey, California.  E. Chan, Okubo, Woo and Fred Chan, Ms.

3   Chan's husband, also attended the meeting.  During the meeting, Ms. Chan reiterated that Kim

4   promised to give her a 60 day due diligence period to decide whether to invest in the Proposed

5   Investment.  During that 60 day period, the money was to be held in trust by BAEG and returned

6   if Ms. Chan decided not to invest in the Proposed Investment.  Ms. Chan again requested

7   immediate return of the money.  Singh and Morrison declined to return the money.  Morrison

8   admitted that some of the money had been spent and that the balance was still in the account but

9   was needed for other commitments.  Singh and Morrison also indicated that they had a proposal to

10  present, but in light of the discussions at the meeting they would not make it, and would instead

11  need to confer with their attorney regarding return of Ms. Chan's money.

12    **BAEG's position:** BAEG contends that on or about May 1, 2008, Kim was introduced to

13  Ms. Chan to discuss Ohana Foundation Business.  Ohana Foundation is a charitable organization

14  headed by Ms. Chan.  Thereafter, on a separate occasion when Kim and Ms. Chan met again,

15  Ms. Chan inquired into the projects Kim was involved with.  Kim informed Ms. Chan in general

16  terms about BAEG's Alternative Energy and Clean Technology Fund.

17    On or about May 19, 2008, while both Ms. Chan and Kim were in Seoul, Korea, Ms. Chan

18  contacted Kim through one of the foundation employees, Andrew Crilly, and informed him that

19  she wished to invest in the general partnership of the fund.  However, BAEG had already received

20  written communication from another source for the entire available general partner investment and

21  would not need the capital contribution from Ms. Chan.  Ms. Chan urged Kim to let her become

22  involved as she believed in the underlying concepts and the timeliness of the Alternative Energy

23  Fund.

24    Kim told Ms. Chan that he would have to refer the matter to his partners.  Kim brought the

25  matter up to the other partners of BAEG and reiterated Ms. Chan's request to allow her to provide

26  a portion of the investment capital. A decision was made to accept Ms. Chan's investment totaling

27  $1,000,000.00 which was on par with the founding members.  In order to provide availability of

28  equity for Ms. Chan to invest, some members were required to subordinate their interests

-4-

in BAEG.  However, the decision was based not only upon the initial $1,000,000.00 investment but also on Ms. Chan's representation that she wanted to invest additional capital.  Kim notified Ms. Chan that BAEG would accept the initial investment and there would be future discussions on subsequent investments.

On or about May 20, 2008, Ms. Chan forwarded One Billion South Korean Won - not the agreed upon $1,000,000.00 USD - from a bank in Korea to Defendant BAEG's corporate bank account in the United States.  Upon arrival at Defendant BAEG's bank account, the One Billion Won were converted into $940,000.00 USD, based on the prevailing exchange rate at the time.  This created a shortfall of $60,000.00 in the funds Ms. Chan had agreed to invest.  The funds cleared BAEG's bank account on or about May 23, 2008.

At or about the same time, Kim advised Ms. Chan that he would be forwarding the limited partnership operating agreeing for her to sign and that the agreement would reflect her investment and her name.  On May 30, 2008, Ms. Chan requested a single change to the Operating Agreement wherein she requested the substitution of her company name, KCR Development, as the investor rather than Ms. Chan individually.  That was the only amendment ever requested by Ms. Chan.

BAEG agreed to Ms. Chan's requested change and included the same in the Operating Agreement.  The change was made by Bhavesh Singh, one of BAEG's officers, on June 2, 2008 in BAEG's New York Office.  The revised Operating Agreement was forwarded to Ms. Chan on June 4, 2008.  No comments or requests regarding the Operating Agreement were ever received thereafter from Ms. Chan, nor her representatives.

After the passing of time, Kim received calls and emails from Ms. Chan, her representatives and family, stating that the house they were building in Cupertino, California, budgeted for $25,000,000.00 was now exceeding $50,000,000.00 in cost and litigation with their contractor was likely.  In addition, Ms. Chan told Kim that she made the $1,000,000.00 investment without speaking with her husband, and he was now upset with her for doing so.  Ms. Chan admitted to Kim that she had made a series of bad investments, and her family had been pressuring her to retrieve and liquidate some or all of those investments.  Ms. Chan stated to Kim that she tried to "cover" the investment with funds that she had hoped would be generated from the

sale of a condominium unit in Seoul, Korea, but that the offer she was counting on had not come through.  Thus, over a period of weeks, a demand for the return of her money was made only later to be retracted.  In addition, a number of meetings to discuss the investment were set up with Ms. Chan, her representatives and BAEG for mid-June and July in New York only to be canceled by Ms. Chan because she wished to maintain her investment.  Finally, a firm demand for the return of the investment was made on July 23, 2008.  Plaintiff's self-serving letter couched the investment as being held in trust and ignored the many conversations with Kim in which Ms. Chan retracted her earlier request for the funds and that she wished to proceed with the investment.

On August 4, 2008, the directors of BAEG met with Ms. Chan and her family.  At that meeting, the family engaged in shouting at and in threatening not only the directors of BAEG, but each other as well, making the meeting a complete circus event.  At one point, Mr. Chan stated by way of threat, that the Chan family were highly sophisticated and that they were keen litigants.  He referred to multiple litigation matters that they had been involved in and that they had never before lost, and moreover, he was making the contractor on the Cupertino residence miserable at the very same time.  The conclusion of the meeting resolved that Defendant BAEG would meet with its counsel within the week and that a proposal for resolution would be made to Ms. Chan within two weeks.  All parties agreed to "sit still" until efforts were made to resolve the issues without expensive and protracted litigation.

In fact, BAEG did exactly as it said it would and met with its counsel.  At that meeting, counsel was told to prepare a Complaint in case settlement was not reached, but specifically informed it should not be filed.

On August 14, 2008, Counsel promptly forwarded to Ms. Chan a proposed structure for repayment of funds under terms BAEG felt were fair and appropriate, given Ms. Chan's demand to make an unauthorized and premature withdrawal of funds.

On August 13, 2008, Ms. Chan raced to the courthouse in California State Court, and without informing BAEG of their intent to do so or that settlement discussions would not be considered, she merely filed her Complaint.  A letter rejecting Defendant's offer was sent to Plaintiff's counsel on August 15, 2008, which reply left no avenue for further negotiations.

1   Notably, counsel in his August 15, 2008, correspondence, made it appear as though Ms.

2   Chan waited until the rejection date to file her Complaint.  Instead, the filing date clearly reflects

3   that Ms. Chan had filed the Complaint prior to even receiving the offer of settlement and while

4   BAEG, to its detriment, restrained from filing its prepared Complaint.

5        Having received the rejection, BAEG filed its Complaint in the New York Southern

6   District Court on August 19, 2008.  Since that time, BAEG has removed Ms. Chan's Complaint to

7   this Court and served Ms. Chan with the New York District Court proceedings.

8        After an initial salvo of motions and filing of briefs contesting jurisdiction, the parties

9   followed the suggestion of New York District Court Judge Preska to attempt to settle the matter

10  without further litigation.  In furtherance thereof, BAEG sought to have this matter referred to

11  binding arbitration.  Ms. Chan refused, insisting on non-binding mediation.  In a continuing effort

12  to put an end to this dispute, BAEG agreed thereto.

13       3.    **Legal Issues**:  **Ms. Chan's position:**  The principal legal issues in dispute are:

14  (1) whether Defendants breached an oral contract with Chan; (2) whether Defendants are liable to

15  Chan based on promissory estoppel; (3) whether Defendants made fraudulent or negligent

16  misrepresentations to Chan; and (4) whether Defendants are liable to Chan for conversion.  Ms.

17  Chan believes the evidence clearly supports that there was an agreement that Ms. Chan's funds

18  would be held in trust by BAEG during due diligence, and returned to her if she requested, and

19  that BAEG failed to return the funds.  This evidence supports Ms. Chan's claims for relief.

20       **BAEG's position:**  BAEG's position is that this matter is pure and simple.  There was a

21  binding agreement by which Ms. Chan was required to invest $1,000,000.00 in the general

22  partnership of BAEG.  Although Ms. Chan never executed the actual Operating Agreement, her

23  commitment to the investment is demonstrated by virtue of the fact that the funds were transferred

24  without restriction.  In fact, Ms. Chan's sole comment on the entire transaction was to change the

25  name of the investor to "KCR Development," rather than Annie Chan individually.  BAEG

26  consented to that change and incorporated the name into the Operating Agreement.

27       Ms. Chan's only legal position is that they had a 60-day period within which to consider

28  the investment and, if so decided, to demand the return of their funds.  However, there are no facts

-7-

to support this position.  There is no agreement setting forth this option.  No correspondence, and no member of BAEG's organization has ever heard of the alleged asserted 60-day option. To the contrary, electronic correspondence make it very clear that Ms. Chan was committed to the investment but attempted to devise a method to get out of the investment once pressure was placed upon her from her family.

4.    **Motions.**    Before the Action was stayed, BAEG had filed a Motion to Strike Amended Complaint; Dismiss Pursuant to FRCP 12(b)(2); Dismiss Pursuant to FRCP 12(b)(5); Dismiss Pursuant to FRCP 12(b)(6) (the "Motion").  The Motion was taken off-calendar pending the outcome of the mediation.

Defendant BAEG respectfully requests the Court to re-schedule its Motion to a date and time that is convenient to the Court.

5.    **Amendment of Pleadings.**    The parties do not intend to join any additional parties at this time.  However, no discovery has been taken to date, and the parties reserve the right to join additional parties as the evidence may dictate.  Ms. Chan reserves the right to add or dismiss any claims by amended pleadings.  Defendants have not yet answered the Amended Complaint, and, therefore, have not pleaded their defenses.

6.    **Evidence Preservation.**    Document preservation steps have been taken by all parties.

7.    **Disclosures.**    The Action was stayed by this Court pending the outcome of the mediation.  The parties suggest setting a time to exchange initial disclosures once Kim has responded to the Complaint.

8.    **Discovery.**    In the state action, Ms. Chan served a request for production of documents on BAEG prior to the removal of the Action.  Ms. Chan would like to set a deadline for BAEG to respond to this document request and would like to set a schedule for discovery, proposed limitations or modifications of discovery rules, and a proposed discovery plan once Kim has responded to the Complaint.  BAEG believes such discussions regarding discovery should be deferred until after the outcome of its Motion.

9.    **Class Actions.**  This is not a class action.

10.    **Related Cases:**  On August 19, 2008, BAEG commenced an action against Chan and KCRD in the United States District Court for the Southern District of New York styled *Bucephalus Alternative Energy Group, LLC v. KCR Development, et al.,* United States District Court, Southern District of New York, Case No. 08 CIV 7343 LAP (the "New York Action"). The facts on which the New York Action are based are substantially similar to this action. Ms. Chan filed a Motion to Dismiss or Transfer or Stay the New York Action.  That motion was deferred while the parties participated in mediation.   A case management conference will be held in the New York Action on February 6, 2009 before Hon. Loretta A. Preska.

11.    **Relief.**   Plaintiffs demand judgment as follows:  (1) for compensatory damages according to proof, but in no event less than $940,000; (2) for punitive and/or exemplary damages in an amount to be determined at trial; (3) for an award of reasonable attorneys' fees and costs; and (4) for such other and further relief as the Court deems just and proper.

12.    **Settlement and ADR.**    The parties participated in a mediation on January 27, 2009.  The matter did not resolve through mediation, however, the parties have had additional communications regarding settlement post-mediation.

13.    **Consent to Magistrate Judge For All Purposes.**   The parties do not consent to assignment of this case to a United States Magistrate Judge for all purposes.

14.    **Other References.**  The parties do not believe this case is suitable for reference.

15.    **Narrowing of Issues.**  Ms. Chan may file a Motion for Summary Judgment or Summary Adjudication.   Depending on the Court's decision concerning defendant's motion to dismiss, BAEG may also consider filing a Motion for Summary Judgment or Summary Adjudication.

16.    **Expedited Schedule.**  The parties do not believe this is the type of case that can be handled on an expedited basis with streamlined procedures.

17.    **Scheduling.**   The case has been stayed in light of the mediation.   BAEG respectfully requests that the Court schedule a hearing date on its Motion at the case management conference.   As such, the parties believe it is premature to propose dates for designation of experts, discovery cutoff, hearing of dispositive motions, pre-trial and trial.

18.   **Trial.**  Chan has demanded a jury trial.

19.   **Disclosure of Non-Party Interested Entities or Persons.**   All parties certify, pursuant to Civil Local Rule 3-16, that other than the named parties, there is no such interest to report.   The parties previously filed their respective "Certification of Interested Entities or Persons."

20.   **Filing of Joint Case Management Conference Statement.**   The parties overlooked, until February 3, 2009, that the Court changed the Stipulated Order submitted by the parties to include a deadline to file a Joint Case Management Conference Statement.  The parties were in the process of preparing the Joint Case Management Conference Statement when they received the notice continuing the case management conference.   The parties apologize to the Court for not timely filing the Joint Case Management Conference Statement.


Dated:  February 5, 2009                    BERGESON, LLP


                                            By: _____/s/_____
                                                   Caroline McIntyre

                                            Attorneys for Plaintiff
                                            ANNIE CHAN


Dated:  February 5, 2009                    MANNING & MARDER, KASS, ELLROD,
                                            RAMIREZ LLP


                                            By: _____/s/_____
                                                   Patrick L. Hurley


                                            Attorneys for Defendant
                                            BUCEPHALUS ALTERNATIVE ENERGY
                                            GROUP, LLC

1    **\*\*\* ORDER \*\*\***

2           In light of the parties' representations, the Court lifts the STAY on this case and orders the

3    Defendant to renotice and refile its Motion to Dismiss.  The Court sets the hearing on the Motion to

4    Dismiss for **April 6, 2009 at 9 a.m.**  Defendant shall renotice and refile its Motion in accordance

5    with the Civil Local Rules of the Court.  The Court VACATES the Case Management conference

6    currently scheduled for February 23, 2009.  The Court will set a new conference date in its Order

7    addressing Defendant's Motion.

8

9    Dated:  February 19, 2009

10                                                    _____
                                                     JAMES WARE
11                                                   United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28